**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

LINDA A. EBERHARDT,    )
     )
    Plaintiff,    )
     )
v.    )
     )    Civil Action No.: 1:10-cv-771
FAIRFAX COUNTY EMPLOYEES'    )
RETIREMENT SYSTEM BOARD OF    )
TRUSTEES, et al.,    )
     )
    Defendant.    )

## MEMORANDUM OPINION

### I.    Background

Before the Court are Defendant Fairfax County School Board's ("School Board") Motion to Dismiss (Dkt. No. 49), Defendants Fairfax County & Board of Supervisors' (the "County" and "Board of Supervisors" respectively) Motion to Dismiss (Dkt. No. 52), and Plaintiff Linda A. Eberhardt's ("Eberhardt") Motion For Leave To File Supplemental Brief (Dkt. No. 61). Plaintiff's two-count Amended Complaint (the "Complaint") alleges that the Defendants are liable for breach of contract (Count I) and for damages resulting from denial of due process and equal protection (Count II).

Eberhardt, an employee of the Fairfax County Public School System, suffered a disabling injury, and as a result, sought out disability benefits from the Fairfax County Employees' Retirement System ("FCERS"). FCERS offers two kinds of disability: (i) ordinary disability and (ii) service-connected disability. Currently, Plaintiff is receiving ordinary disability; however, she contests that she is entitled to receive service-connected disability.[1]

Plaintiff originally applied to FCERS for service-connected disability benefits in July of

---

[1] For purposes of the Motion to Dismiss, the Court presumes true all facts pled in the Complaint.

2008. FCERS initially denied Eberhardt's request for any disability benefits, but on appeal the

FCERS Board of Trustees (the "Trustees") awarded her ordinary disability retirement.[2] Plaintiff

then appealed the Trustees' decision to the Fairfax Circuit Court, maintaining that she was

entitled to service-connected disability. The Circuit Court found that it was without jurisdiction

to consider a direct appeal from the FCERS Board, and that a direct right of appeal was

statutorily granted only to police officers, not to other County employees.

Plaintiff then filed the present action in the Eastern District of Virginia against the

FCERS Board of Trustees. The Court granted the Trustees' Motion to Dismiss and gave Plaintiff

leave to file an amended complaint, adding Fairfax County as a party. Plaintiff filed an amended

Complaint naming the School Board, the Board of Supervisors, and the County as defendants.

Meanwhile, Eberhardt pursued an appeal of the Fairfax County Circuit Court decision to the

Supreme Court of Virginia.

Defendants in this cause of action filed motions to dismiss. The Court denied the motions

without prejudice and stayed this action pending a decision from the Supreme Court of Virginia.

The Virginia Supreme Court rendered its decision affirming the Fairfax County Circuit Court's

determination on January 13, 2012. This Court lifted the stay, and Defendants noticed Motions to

Dismiss which the Court heard on March 16, 2012. The Court has read the parties' briefing and

considered the arguments made at the hearing, and this matter is ripe for disposition.

II.   **Analysis**

    a.   **The School Board's Motion to Dismiss**

Plaintiff names the School Board as a defendant in this action based on an agency theory.

In sum, Plaintiff alleges that FCERS is an agent of both the County and the School Board.

---

[2] The School Board also stipulated in December 2007 that Eberhardt was disabled due to her pre-injury work, and as a result, she was awarded benefits from the Virginia Workers' Compensation Commission.

Consequently, Plaintiff contends that the School Board bears liability for FCRES' alleged

wrongful actions—the subject of the Complaint.

To determine whether FCERS is the School Board's agent, it is first significant to note

the legal distinction between agency and apparent agency.

> Apparent agency is distinct from agency in that agency is applied when an
> agreement for representation actually exists between the principal and the agent.
> Apparent agency exists when there is [1] an appearance of agency paired with
> acquiescence thereto and [2] *reasonable reliance thereupon*; it is based upon
> *logical assumptions* and *reasonable conclusions*.

*Giordano ex rel. Estate of Brennan v. Atria Assisted Living, Virginia Beach, L.L.C.*, 429 F. Supp.

2d 732, 736-37 (E.D. Va. 2006) (emphasis added). Because Plaintiff has not made a compelling

argument that the alleged agency relationship exists by way of an actual agreement between the

parties, the Court assumes that Plaintiff's allegations are based on an apparent agency theory.

Assuming, without deciding, that the School Board and FCERS displayed "an appearance

of agency paired with acquiescence thereto,"[3] Dillon's Rule forecloses the possibility that it

would be reasonable for Plaintiff to rely on any appearance of agency. In the Commonwealth of

Virginia, Dillon's Rule prohibits school boards from exercising powers other than those

expressly granted by the legislature or necessarily implied from those expressly granted powers.

*See Kellam v. School Bd. of City of Norfolk*, 117 S.E.2d 96, 98 (Va. 1961) (describing school

boards as "public quasi corporations that exercise limited powers and functions of a public nature

granted to them expressly or by necessary implication, and none other"). The Virginia

---

[3] However, the Court does not believe the relationship between the School Board and FCERS creates the "appearance of agency paired with acquiescence thereto." The School Board provides eligible employees the right to participate in the FCERS retirement disability plan, but the employee's entitlement to benefits under the plan is administered by the FCERS. FCERS is the provider of one of several retirement plans available to the school system employees, each of which is administered by a third party.

    In addition, none of the facts pled indicate that the School Board had any control over the FCERS' award decision. Indeed, it is telling that although the School Board stipulated to the fact that Eberhardt's disability was work related, the FCERS Board has apparently not agreed to that finding. Nor has the School Board had any say in FCERS' determination as to what kind of benefits to award Eberhardt.

Constitution charges school boards with supervising schools in each school division. Va. Const. Art. VIII, § 7. The powers and duties of the school board are further delineated in Virginia Code § 22.1-79. Nowhere in this grant of authority are school boards explicitly or implicitly granted the power to establish or monitor a retirement system.

In contrast, Virginia Code § 51.801 delegates authority to counties, cities, and towns to establish retirement systems. In sum, because the powers of schools boards are limited, and because establishing a retirement system is not included in the School Boards' express powers or powers necessarily implied from those express powers, it would be unreasonable for any third party to believe that the School Board could act as a principal to an organization responsible for administering a retirement system.

Accordingly, the Court finds that the School Board is not a proper party to this cause of action. The School Board's Motion to Dismiss is GRANTED.

### b. The County's Motion to Dismiss

#### i. Breach of Contract

Defendant Fairfax County[4] moves to dismiss Count I of the Complaint, alleging breach of contract, on the basis that Plaintiff has failed to satisfy statutory procedural prerequisites.

Virginia statutes establish jurisdictional requirements that must be followed before a party is entitled to sue a county. As set forth in the Virginia Code,

> No action shall be maintained by any person against a county upon any claim or demand until such person has presented his claim to the governing body of the county.

---

[4] Counties may be sued in their own name, *see* Va. Code § 15.2-1404, and members of governing bodies, serving in their official capacities, are immune from suit. *See* Va. Code § 15.2-1405. For the purposes of interpreting the pleadings, the Court considers references to the County and the Board of Supervisors to be one and the same. For purposes of this Opinion, all references to the County are also intended to reference the Board of Supervisors.

Va. Code § 15.2-1248. Once the governing body is presented with a claim, the following statute becomes relevant:

> The determination of the governing body of any county disallowing a claim, in whole or in part, shall be a bar to any action in any court founded on such claim, unless (i) the decision of the governing body disallowing the claim is appealed; (ii) the governing body consents to the institution of an action by the claimant against the county; or (iii) the governing body fails to act upon any claim within 90 days of the date the claim is received by the governing body or its clerk, provided that such time may be extended by mutual agreement of the claimant and the county.

Va. Code § 15.2-1247. Should the County disallow a claim, the claimant may appeal the decision.

> [w]hen a claim of any person against a county is disallowed in whole or in part by the governing body, if such person is present, he may appeal from the decision of the governing body within 30 days from the date of the decision. If the claimant is not present, the clerk of the governing body shall serve a written notice of the disallowance on him or his agent, and he may appeal from the decision within 30 days after service of such notice. In no case shall the appeal be taken after the lapse of six months from the date of the decision. The appeal shall be filed with the circuit court for the county.

Va. Code § 15.2-1246.

Citing *Nuckols v. Moore*, 362 S.E.2d 715 (1987), Plaintiff argues that these requirements are inapplicable to her situation because the statutory prerequisites apply only to actions regarding monetary claims. Plaintiff contends that this is, in essence, a claim for declaratory relief. The Court finds Plaintiff's argument unavailing.

The Supreme Court of Virginia has been clear; the statutory claims procedural requirements apply to claims for declaratory relief when they are, at their core, claims for monetary relief. *See Chesterfield Cnty. v. Town and Country Apartments and Townhouses*, 203 S.E.2d 117, 118 (Va. 1974) ("The determinative question in this case is whether failure to comply with the foregoing Code section bars the maintenance against a county of a declaratory judgment proceeding which basically involves, so far as the county is concerned, a contractual

dispute and a resulting monetary claim against the county. We answer the question in the affirmative.").

More importantly, the Court is not faced with determining whether Plaintiff has disguised a monetary claim for breach of contract as one seeking declaratory relief because Plaintiff's request for monetary relief is clear. Count I alleges a claim for "Breach of Contract." She pleads that "[a]s a result of the . . . breach of contract, [she] has suffered substantial *monetary damages*." Compl. ¶ 35 (emphasis added).[5] This cause of action is of the precise nature that the Virginia courts have deemed subject to the statutory claims procedural requirements. Indeed, Plaintiff presented her claim to the County in December 2010, after filing this cause of action in June of that year. The County denied Plaintiff's request on February 28, 2012.[6] According to Virginia statutes, should Plaintiff wish to contest the County's decision, she must do so in the Fairfax County Circuit Court.

### ii. Due Process

Next, the County moves to dismiss Plaintiff's due process claim. Because the Complaint lacks specificity as to the precise nature of the due process deprivation, in concordance with the parties' briefing, the Court will address both procedural and substantive due process, respectively.

A plaintiff alleging she was deprived procedural due process must first establish that she had a legitimate claim of entitlement to a liberty or property interest. *See Mallette v. Arlington*

---

[5] In briefing, Plaintiff asserts that "[e]ven if [her] claim for an award of retirement benefits could be characterized as monetary, the provisions of Va. Code §§ 15.2-1243 through 15.2-1248 do not apply because the relief requested is for the appropriate entity, . . . to award the requested retirement benefits." Pl.'s Mem. in Opp'n, Dkt. No. 59, p.12. The result is the same. At its core, Plaintiff's request seeks a stream of monetary payments. The verbiage Plaintiff uses to characterize her request is of no moment. She must first satisfy the statutory claims procedural requirements. *See Chesterfield Cnty.*, 203 S.E.2d at 118. At the hearing, the County affirmed its understanding that this is indeed a claim for monetary relief, and that the County would be foreclosed from arguing alternatively in state court.

[6] Whether the County failed to respond within an appropriate time frame is also not before the Court. Plaintiff initially filed her claim with the County *after* filing the governing Complaint in August of 2010.

*Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996). Plaintiff has made such

a showing here. In determining whether a Plaintiff has a property interest in a benefit, the focus

is on whether the Plaintiff has a "legitimate claim of entitlement to [the alleged interest]." *Bd. of*

*Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Here, such a claim of entitlement

stems, if at all, from the Fairfax County Municipal Code. *See Mallette*, 91 F.3d at 635. The

statute at issue provides that

> any member . . . may retire on account of disability which is due to injury by
> accident . . . which arose out of and in the course of the member's service;
> provided that the Medical Examining Board, after a medical examination of such
> member shall certify that such member is, and has been continuously since the
> date such retirement is to be effective, mentally or physically incapacitated for
> further employment by the employer as a result of such injury or disease, that
> such incapacity is likely to continue into the indefinite future, and that such
> member should be retired. The Board shall determine whether a member is
> disabled due to injury by accident and/or disease(s) which arose out of and in the
> course of a member's service. In making this determination, the Board shall
> consult the decisions of the Industrial Commission, the Court of Appeals, and the
> Supreme Court of Virginia which have applied or construed similar language
> under the Virginia Workers' Compensation Act.

Fairfax Cnty. Mun. Code § 3-2-35. In sum, if the employee can establish (1) a disability, (2) that

arose out of and in the course of service, and (3) the Medical Examining Board makes the

requisite certification—the employee may retire. In addition, § 3-2-36 provides that when retired,

a member *shall* receive an annual retirement allowance. (emphasis added).

In determining whether this provision establishes in Plaintiff a statutory entitlement to

which due process attaches, or in the alternative, a mere expectation, which is not sufficient to

create due process, the Court must consider "the degree to which the decision-makers' discretion

is constrained by law." *Mallette*, 91 F.3d at 635 (citing *Board of Pardons v. Allen*, 482 U.S. 369,

382 (1987) (O'Connor, J., dissenting)). Unless the benefit is "channeled by law," the Plaintiff

has "nothing more than a mere hope of receiving a benefit." *Id.* In other words, "the statute must

- 7 -

act to limit meaningfully the discretion of the decisionmakers." *Id.* In *Mallette*, the Fourth Circuit found that the Arlington statute at issue, similar to the Fairfax County statute at issue in the present case, vested in county employees "who met its requirements[7] with a right to receive disability retirement benefits when they suffer work-related disabilities." *Id.* at 636.

As in *Mallette*, the statutes at issue here provide "particularized standards or criteria [that] guide the decision makers." *Id.* The only decision left to the FCERS Board is whether the disability occurred in the course of and arose out of the employment. Even then, the Board is directed to consider other bodies who have made a similar determination. Moreover, "[o]nce an employee meets those particularized standards, the Code does not allow [the FCERS] the discretion not to award benefits, or to apply additional or alternative eligibility criteria." *Id.*; *see also* Fairfax Cnty. Mun. Code § 3-2-26 ("Upon retirement under the provisions of Section 3-2-35, a member shall receive an annual retirement allowance. . . ."). Additionally, "[t]he right to payment of disability retirement benefits arises by virtue of past labor services and past contributions to a disability fund. Member employees, who contribute their earnings to the system, reasonably expect that accrued benefits will be waiting if they need them and qualify for them." *Mallette*, 91 F.3d at 636. Thus, if Plaintiff can make a prima facie showing that she has met the listed requirements, the lack of discretion afforded the FCERS Board, in addition to her past contributions, suggest that Plaintiff is entitled to due process before a final decision denying service-connected disability benefits would be proper.

To make the prima facie case, Plaintiff must show that she has a disability, that the disability arose out of her employment, and that the Medical Board of Examiners certified that

---

[7] The Arlington ordinance, analyzed in *Mallette*, "directs payment of benefits once a medical examining board has certified that the disability (1) is permanent; (2) incapacitates the employee for his or her duties; and (3) resulted from an accident or injury that occurred in the actual performance of a duty." *Mallette*, 91 F.3d at 635.

she is incapacitated. Plaintiff's pleadings allege that she suffered injury on January 5, 2007, and Plaintiff's disability is not disputed. Although the County does not admit that the disability was work related, Plaintiff's ability to secure Workers Compensation indicates that Plaintiff could at least make a prima facie showing that the disability meets the work-related requirement.

Thus, the real issue in dispute is whether Plaintiff can make the requisite showing that she is physically incapacitated for further employment by the employer. Plaintiff's pleadings allege that she was initially denied all forms of disability. On appeal, the FCERS Board awarded her ordinary disability,[8] but again denied her request for service-connected disability. She alleges that the Medical Examining Board provided a recommendation indicating that her disability claim was dependent on whether "a permanent light duty position [was available] for her." *See* Am. Compl., ex. 8. Yet, her employment as a food service worker was terminated in September of 2009, and to date, the School Board has not provided or offered her any light duty position.

Although Plaintiff's medical reports show that she is capable of performing light-duty work, the School Board's inability to place her in a light duty position for over two years indicates that, at least in effect, she lacks the capacity to continue with her prior employer. In any event, these facts are at least sufficient to establish the prima facie showing entitling Plaintiff to procedural due process. The fact that the County has denied Plaintiff disability to date is not dispositive. *Roth*, 408 U.S. at 577 (clarifying that in *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Court held that the welfare claimants were entitled to due process even though they "had not yet shown that they were, in fact, within the statutory terms of eligibility").

Once a plaintiff has established a legitimate liberty or property interest, due process

---

[8] *See* Fairfax Cnty. Mun. Code § 3-2-33. Based upon the Court's reading, the only relevant distinction between ordinary disability and service-connected disability is that service-connected disability is awarded when the disability "is due to injury by accident and/or disease(s) which arose out of and in the course of the member's service;" whereas, the requirement that the disability be job related is not a condition of ordinary disability retirement.

requires, at a minimum, notice and an opportunity to be heard. *E.g.*, *Goldberg*, 397 U.S. 254.

But, in some circumstances, procedural due process could require more. In determining how

much process is due, considering the circumstances, a court should balance:

> [f]irst, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In addition, the Fourth Circuit directs a district

court to consider any post deprivation remedies that a state provides. *See Mallette*, 91 F.3d at 640

n.6 (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation

actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless

and until the State fails to provide due process.")).

> Thus, if Virginia law provided an opportunity for [plaintiff] to seek redress for an
> erroneous denial of benefits in state court, the process available to her—both
> before and after the denial of benefits—may be adequate to comply with the Due
> Process Clause. *See Mathews*, 424 U.S. at 349 (noting availability of
> postdeprivation review in upholding sufficiency of process provided to recipients
> of Social Security disability payments prior to termination). Whether relief from
> an adverse determination by the System"s Board of Trustees was available to
> [plaintiff] was neither briefed nor argued by the parties, except that the County
> denied her request for reconsideration of its decision.

*Id.* As it stands, Plaintiff is in a position to seek redress in the Fairfax County Circuit Court.

Thus, the issue of whether Plaintiff has received all the process she is due is not yet ripe.

Consequently, the Court finds that it is not presently in a position to evaluate whether Plaintiff

has been denied due process, and this Count is dismissed without prejudice. Should Plaintiff find

it necessary to re-plead this allegation before the Court at a later date, she may do so. Should she

do so, the Court cautions Plaintiff to consider the pleading standards set forth in *Iqbal*[9] and

---

[9] *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937 (2009).

*Twombly.*[10] Specifically, the Defendant is entitled to know what process Plaintiff believes she was due and, yet, did not receive.[11]

As for any alleged substantive due process violations, the Court grants Defendant's Motion to Dismiss with prejudice. First, the Complaint does not make clear whether the alleged due process violations are of a substantive or procedural nature. It is in an abundance of caution, and in conformance with the parties' briefing, that the Court addresses both of these separate due process limitations. The substantive aspect of the due process clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). In determining whether an action violates substantive due process,

> the issue of fatal arbitrariness should be addressed as a "threshold question," asking whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest. If it does meet the threshold test of culpability, inquiry must turn to the nature of the asserted interest, hence to the level of protection to which it is entitled. *See id.*

*Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999). Negligent conduct is inadequate to meet this threshold requirement. Indeed, even certain forms of intentional conduct will not suffice. The conduct must be "intended to injure in some way *unjustifiable by any government interest.*" *Id.* at 742 (citing *Lewis*, 523 U.S. at 847) (emphasis in original). Plaintiff contends she was denied a contractual property right to retirement benefits. The County has posited sufficient justification for their actions in the memoranda before the Court. Essentially, the County argues that Plaintiff is employable in light duty positions and thus does not qualify for service-

---

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[11] Additional clarity would also assist the Court in properly evaluating any motions challenging future claims.

connected disability. Although this Court believes that a reviewing body could determine that Plaintiff is entitled to service-connected disability retirement, as a matter of law, the Board's conduct in denying such a right does not rise to the level required to establish a substantive due process violation. Simply put, the County's actions do not "shock the conscience"; nor are they "'fatally arbitrary' in this constitutional sense." *Id.* To the extent that the complaint intended a claim for substantive due process, it is DISMISSED, with prejudice.

### iii.  Equal Protection

Finally, Defendant moves to dismiss Plaintiff's equal protection claim. The Court first notes that the Complaint is deficient and fails to satisfy the basic pleading standards required under Rule 8 of the Federal Rules of Civil Procedure. Dismissal is appropriate on this basis alone; however, the Court finds it unnecessary to grant leave to amend because this claim is also substantively deficient.

The Court assumes from the briefing before the Court that the equal protection violation is based on a Virginia statute that provides a direct right of appeal from FCERS decisions to the Circuit Court. As interpreted by Virginia's Supreme Court, the relevant statute[12] provides a direct appeal only to police officers. *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 721 S.E.2d 524, 525 (Va. 2012). Other county employees have no right of direct appeal to the Circuit Court, and must instead follow the statutory claims procedural requirements. Based on this finding, Plaintiff alleges that "Virginia denies equal protection of the law to county and city employees who are not members of the local Police Officers Retirement System." Pl.'s Mem. in Opp'n, Dkt. No. 59, p.19.

---

[12] *See* Va. Code § 51.1-823 ("An appeal of right from the action of the retirement board of any county having an urban county executive form of government on any matter in which the board has discretionary power shall lie to the circuit court of the county which has jurisdiction of the board.").

To make out a claim for an equal protection violation,

> a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

As previously mentioned, Plaintiff fails to identify in her Complaint how she has been treated differently from others. It is only in briefing that this alleged disparity comes to light, and the Court assumes from briefing that the equal protection violation is based on Virginia statutes that provide a direct right of appeal only to police officers, as explained *supra*.

The Plaintiff has also failed to plead that the unequal treatment was the result of intentional or purposeful discrimination. Nor has Plaintiff provided any alleged purposeful discrimination in briefing or at the hearing. Plaintiff repeatedly alleges that she was purposefully denied a right to appeal, but this only affirms that the County acted as governed by the statute. It does not show that the governing statute was itself intentionally discriminatory.

Even assuming that Plaintiff has surmounted each of these hurdles (she has not), the statutory classification passes rational basis review,[13] and should therefore be upheld. The Fourteenth Amendment is not intended to deprive the state all powers of classification; it is meant to keep "governmental decision makers from treating differently persons who are in all relevant respects alike." *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Rational basis review requires only that the law be rationally related to a legitimate government purpose. *Romer v. Evans*, 517 U.S. 620, 633 (1996). The Plaintiff has the burden to prove that the law does not

---

[13] Plaintiff has identified no suspect class or fundamental right being infringed. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.").

serve any conceivable legitimate purpose or is not a reasonable way to reach the government's objective. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) ("On rational-basis review, a classification . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it.") (internal citations and quotations omitted). Plaintiff has failed to carry that burden in this case.

In briefing, the County highlights the fact that, unlike other state and local employees, police officers are not entitled to coverage under the Social Security system. This coverage is afforded to other State employees by an agreement entered into between Virginia and the Social Security Commissioner. *See* 42 U.S.C. § 418 (a)(1), (d)(3) and (5)(A). Not only are police officers not similarly situated with the Plaintiff, but because police officers' disability coverage is more limited, the state also has an interest in providing them with a direct appeal from any decision denying them disability. The Supreme Court has made clear,

> [i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*F.C.C.*, 508 U.S. at 314. Because Plaintiff could not plausibly allege that the statute under consideration fails under the scrutiny of rational basis review, and because Plaintiff has not contested Defendant's purported justification for the different treatment in the statute, Plaintiff's equal protection claim must be dismissed with prejudice.

### c.  The Supplemental Brief

Consistent with the rulings in open Court, the Court GRANTS Plaintiff's Motion for Leave to File Supplemental Brief (Dkt. No. 61).

### III.  Conclusion

For these reasons, the Court GRANTS the School Board's Motion to Dismiss (Dkt. No.

49), and GRANTS the County and Board of Supervisors' Motion to Dismiss (Dkt. No. 52).

The Court also GRANTS Plaintiff's Motion for Leave to File Supplemental Brief (Dkt.

No. 61).

An appropriate Order shall issue.


March 30, 2012
Alexandria, Virginia
                                            /s/
                                    Liam O'Grady
                                    United States District Judge